UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | CRIMINAL NO. 23-CR-393 (RC) |
| | : | |
| **HACHIKOSELA MUCHIMBA,** | : | |
| | : | |
| **Defendant.** | : | |

## UNITED STATES'S OPPOSITION TO DEFENDANT'S
## MOTION TO MODIFY CONDITIONS OF RELEASE

Offering scant evidence and argument, the defendant now asks this Court to reconsider its order that placed him on electronic monitoring. This request should be denied. As discussed further below, the defendant remains a serious flight risk and his prior instances of non-compliance hardly assuage that concern. In support of its position, the government relies on the following points and authorities:

1. During his work as a mail carrier for the U.S. Postal Service, the defendant misappropriated at least $1.6 million worth of checks from the mail that were intended for delivery to D.C. residents. (DE No.[1] 11 at 4.) He then deposited those misappropriated checks into bank accounts that he controlled—in some instances, the defendant did so while still wearing his U.S. Postal Service uniform. (DE No. 1-1 at 6-7.) The defendant then used the proceeds of the scheme "to fund a lavish lifestyle" consisting of "travel within the United States and abroad, stays at luxury hotels, and purchases at gentlemen's clubs." (DE No. 11 at 5.)

2. On September 19, 2023, law enforcement agents arrested the defendant at Dulles International Airport just before the defendant could board an outbound flight to the Republic of

---

[1] "DE No. __" refers to the ECF docket entries in the captioned case at the referenced number.

Zambia. (DE No. 5.) At that time, the defendant's name and picture had appeared in recent media reports concerning the crimes in this case and the defendant was well-aware that he would soon be charged by the government.[2] The government sought pre-trial detention because the defendant presented a serious risk of flight. (DE No. 6.)

3. Following a detention hearing, Magistrate Judge Meriwether ordered that the defendant be placed on GPS monitoring because it was the "least restrictive condition(s)" that would "reasonably assure the appearance of the [defendant] as required" for future proceedings in this case. (DE No. 7 (citing 18 U.S.C. § 3142(c)(1)(B)).)

4. The government submits that the defendant continues to pose a serious flight risk and, accordingly, his current conditions of release should remain in place. As the Court is aware, the defendant previously attempted to flee from prosecution when he obtained a Zambian passport and purchased a flight with another person's credit card. (DE No. 6 at 6-7.) The defendant was born in Zambia, which is a country from which extradition might not be possible.[3] And, although he is a naturalized U.S. citizen, the indictment in this case demonstrates that he only obtained naturalization by lying to immigration authorities—which is itself a further crime. (DE No. 11 at 11-12.)

5. The defendant's counsel mischaracterizes the facts (at 1-2) by claiming the defendant has been "in perfect compliance" with his release conditions. As the Court is already aware, on October 31, 2023, the defendant asked his Pretrial Services Officer for permission to

---

[2] *See, e.g.*, Ivy Lyons, "DC postal employee steals nearly $1.7 million from residents, prosecutors claim," WTOP News (Sept. 2, 2023), *available online at* https://wtop.com/dc/2023/09/dc-postal-employee-steals-nearly-1-7-million-from-residents-prosecutors-claim (accessed July 1, 2024).

[3] Zambia became independent from the United Kingdom in 1964. While the 1931 Extradition Treaty between the United States and the United Kingdom is in force between the United States and Zambia, its use has been infrequent.

2

leave his home so he could go to the Department of Motor Vehicles. The officer acceded to the request only to later learn from GPS records that the defendant never went to the DMV; "instead [the defendant] went to [his girlfriend's] residence[.]" (DE No. 13 at 2.) And there have been at least two other instances when the defendant deviated from the Court's requirement that he not leave his home without advance approval from the Pretrial Services Agency. (DE No. 13 at 2.)

6. The defendant simply should not be trusted to return to court based on his personal promise. In addition to the lies he told to the government to secure naturalization (DE No. 11 at 11-12), he quite obviously lied in administrative forfeiture proceedings by claiming that he had a "valid, good faith, and legally recognizable" interest in money that he had stolen from the victims of his scheme. (DE 6 at 7.)

7. The weight of the government's evidence against this defendant is forceful and compelling. (DE No. 6 at 5-6.) The defendant faces substantial penalties upon conviction. (DE No. 6 at 4-5.) He remains a serious flight risk and the Court should not change the GPS monitoring requirement in his conditions of release.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By: _____
JOHN W. BORCHERT (D.C. Bar No. 472824)
DIANE LUCAS
Assistant United States Attorneys
601 D Street, NW
Washington, D.C. 20530
Borchert: (202) 252-7679
Lucas: (202) 252-7724
John.Borchert@usdoj.gov
Diane.Lucas@usdoj.gov

July 3, 2024

3

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of July 2024, I served a copy of the foregoing on counsel for the defendant via the court's ECF system.

_____
JOHN W. BORCHERT
Assistant United States Attorney