UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CRIMINAL NO. 23-CR-393 (RC)** |
| | : | |
| **HACHIKOSELA MUCHIMBA,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
### FOR RELEASE PENDING SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant's Motion for Release Pending Sentencing ("Motion") [ECF No. 69]. Defendant, a U.S. Postal carrier, was convicted by jury of twenty felony counts, involving charges of conspiracy, bank fraud, theft of mail and unlawful procurement of citizenship for stealing over $1.5 million in U.S. Treasury checks from postal customers and lying about it to United States Citizenship and Immigration Services ("USCIS") in order to obtain U.S. citizenship. Defendant's motion fails to overcome the statutory presumption for detention post-conviction under 18 U.S.C. § 3143(a), and therefore, his motion should be summarily denied.

### ARGUMENT AND ANALYSIS

On June 1, 2025, Defendant filed the instant motion claiming he should be released from custody on home detention because he "is not likely to flee and does not pose a danger to the safety of any other person or the community if released under 18 U.S.C. § 3142(c)." ECF No. 69 at 2. Defendant incorrectly claims he has overcome the statutory presumption of detention because he: (1) "has been aware of the charges and possible sentencing outcomes since the commencement of these proceedings[;]" (2) has obtained a letter from the Embassy for the

Republic of Zambia stating that "no travel documents will be issued to him unless so authorized by this Courtl[;]"¹ and (3) has lived with his sister and nephew during the pending of the proceedings." *Id.* None of Defendant's claims by themselves or combined together provide "clear and convincing evidence" that Defendant is not a flight risk or a financial threat to the community.

Pursuant to 18 U.S.C. § 3143(a), there is a statutory presumption of detention for a defendant pending sentencing for the crimes of which defendant was convicted. Indeed, detention post-conviction is required in this matter "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a). *See also United States v. Tann*, No. 04-cr-392 (CKK), 2006 WL 1313334, *4 (D.D.C. May 12, 2006), citing *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004) ("The statute therefore imposes a presumption in favor of detention.").

Unlike in a pre-trial setting, post-conviction, pre-sentencing defendants have the burden of proof to overcome the presumption of detention under 18 U.S.C. § 3143(a). *See United States v. Wiggins*, 613 F.Supp.3d 348, 353 (D.D.C. 2020) ("In this circumstance [18 U.S.C. § 3143(a)], far from promoting liberty, a court is generally required to *detain* the defendant as the background rule."); *United States v. Khanu*, No. 09-cr-3139 (CKK), 370 Fed.Appx. 121, 2010 WL 1169788, at * 2 (D.D.C. 2010) (Defendant failed to overcome presumption of detention under 18 U.S.C. § 3143(a), even though he had strong family ties in the community); *see also United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988) (finding community letters in support

---

¹ It should be noted that although cited in the motion, there was no letter from the Embassy of the Republic of Zambia attached as an exhibit to ECF No. 69.

of defendant were insufficient to overcome defendant's burden to demonstrate lack of dangerousness to the community). Here, none of the three claims Defendant asserts demonstrate by "clear and convincing evidence" that he is not a flight risk or a financial danger to the community.

Defendant first argues that he is not a flight risk because he "has been aware of the charges and possible sentencing outcomes since the commencement of these proceedings." ECF No. 69 at 2. The fact that Defendant knew of the charges and penalties should not give the Court any reassurance that Defendant will appear for sentencing. As the Court is aware, Defendant tried to flee before – after Defendant was apprised of the investigation, potential charges, and penalties. *See* ECF No. 6.

Since at least March 29, 2023, Defendant knew about the criminal investigation when federal agents executed a search warrant at Defendant's personal residence. *Id*. at 2. During the execution of the search warrant the Government seized Defendant's U.S. Passport, two expired Zambian passports, a current Zambian passport, a Washington, D.C. driver's license, a void Maryland driver's license and a Social Security Card. *See* ECF No. 6 at 2-3. On June 22, 2023, the Government provided Defendant with a pre-indictment reverse proffer regarding the anticipated charges, the strength of the government's case as well as a pre-indictment plea offer (which Defendant rejected). *Id*. at 3. Shortly after the reverse proffer, on July 19, 2023, Defendant obtained a new Zambian passport. *Id*. at 4. On August 29, 2023, the government filed civil forfeiture complaint against funds seized from Defendant's bank account earlier in the year. *Id*. at 6. On September 9, 2023, Defendant was identified in a Washington Post article regarding the civil forfeiture matter. *Id*.  On September 20, 2023, Defendant was caught by law enforcement officers at Dulles International Airport attempting to get on a plane headed to

Africa. *Id.* at 3-4. Defendant purchased the ticket using a credit card in the name of another individual. *Id*. at 4. At the time of Defendant's arrest, he was in possession of his newly issued Zambian passport. *Id*. Therefore, Defendant's argument that simply because he knew of the charges and possible penalties, he is not a flight risk is without merit.

Defendant secondarily urges the Court to consider a letter from the Embassy of the Republic of Zambia as proof that Defendant is not a flight risk.[2] Defendant asserts that the Embassy for the Republic of Zambia has indicated that "no travel documents will be issued to [Defendant] unless so authorized by this Court."[3] ECF No. 69 at 2. While the Zambian government may not provide Defendant with a new passport, there is nothing prohibiting Defendant from obtaining a passport or travel documents from another country. As noted in *United States v. Abdulkadir*, Case No. 21-cr-377, 2024 WL 342698, at *1 (N.D. Ohio January 29, 2024),

> The fact that [defendant] has no passport does not automatically alleviate the risk of flight. *See, e.g.*, *United States v. Bonilla*, 388 F.App'x 78, 80 (2d Cir. 2010) (affirming district court's detention order "even though [the defendant] offered some evidence to challenge the statory presumption of flight[,] including the surrender of his passport and having "close family" in the area); *United States v. Jinwright*, No. 3:09-cr-67, 2010 WL 2926084, at * 5 (W.D.N.C. July 23, 2010) (holding that the defendant's voluntary surrender of his passport did not overcome presumption that convicted defendant posed a flight risk given the defendant's frequent international travel in recent years and access to financial resources).

---

[2] Although the Government has not received a copy of the purported letter, for purposes of this Opposition, the Government will assume the facts alleged by Defendant about the letter are correct.

[3] The Government has no knowledge of what passport(s) or other travel documents Defendant may have obtained since the search warrant was executed on March 29, 2023.

*United States v. Abdulkadir*, 2024 WL 342698, at *2. As the above cases suggest, one country agreeing not provide travel documents and/or a defendant turning over a passport to Pretrial Services does not necessarily minimize a defendant's flight risk. This is particularly true, where a defendant has frequent international travel and access to funds. During the course of his fraud scheme, Defendant traveled to other countries, such as the United Arab Emirates and Bali and used his ill-gotten gains in those countries. *See* Trial Exhibit No. 601. As a result, Defendant is an experienced world traveler and may have international connections other than to Zambia.

Defendant may still have a significant amount of unlawfully obtained funds hidden away making him an increased risk of flight. "Unsurprisingly, courts have repeatedly recognized that defendants who have significant financial means simultaneously have the ability to flee and thereby pose an increased risk of flight." *United States v. Abdulkadir*, *supra*., citing *United States v. Madoff*, 316 F.App'x 58, 59 (2d Cir. 2009); *United States v. Khanu*, 370 F.Spp'x 12, 121-22 (D.D.C. 2010); and *United States v. Poulsen*, 521 F.Supp.2d 699, 704 (S.D. Ohio 2007). During his two-plus year crime spree, Defendant acquired more than $1.5 million from stolen U.S. Treasury checks. Of that amount, the government was only able to recover $409,662.95. *See United States v. $409,662.95 in U.S. Currency*, Case No. 23-cv-02527. Defendant spent a lot of the remaining unlawfully obtained funds, including on travel to other countries and at gentlemen's clubs, however, the government was not able to account for all of funds. Indeed, at least $215,063 of the unlawfully obtained funds were either transferred through CashApp transactions or withdrawn as cash. *See* Government's Trial Exhibit No. 601. Thus, the possibility that Defendant has significant funds stashed away someplace increases the likelihood of his flight prior to sentencing.

Defendant's third argument – that he has community ties to this area because his sister and nephew provided him with a residence does not overcome the strong presumption of detention post-conviction. Nor does Defendant's additional invalid argument prevail – that because he "does not have any substance abuse issues, nor has he been convicted of a violent or drug offense. As such, there is no presumption of detention even following his conviction of the counts in the Indictment." *See* ECF No. 69 at 2. "It is reasonably clear that section 3143(a)(1) requires a court to make the same flight risk and dangerousness assessment that the Bail Reform Act requires, only now, detention is presumed, and it is the defendant's burden to convince the court that he satisfies the non-dangerousness and no-flight-risk conditions of release[.]" *United States v. Wiggins*, *supra*., 613 F.Supp.3d at 353-354.

The Court may look at the pretrial release factors set forth in 18 U.S.C. § 3142(g) to determine whether a defendant has met his/her burden of proof to overcome the presumption for post-conviction release, including the nature of the criminal activity, the weight of the evidence, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community. *See* 18 U.S.C. § 3142(g); *see also United States v. Tann*, Case No. 04-cr-392 (CKK), 2006 WL 1313334, at *5 (D.D.C. May 12, 2006). None of those factors favor Defendant. Here, the nature of the crimes and the weight of the evidence presented at trial show demonstrate that Defendant's risk of flight is more likely. The evidence at trial was irrefutable – Defendant's fraudulent criminal activity spanned over two years and was not accidental but repeated over time in various ways. The fraud scheme took planning, forethought, and the cooperation of others to effectuate the scheme to defraud. Defendant also conducted his fraud scheme while lying to USCIS officials to obtain U.S. citizenship. None of the 18 U.S.C. §

3142(g) factors show that Defendant is particularly trustworthy or no longer a risk of flight or economic danger to the community.

Defendant makes a final argument to the Court that he needs time to put his affairs in order. ECF No. 69 at 3. As noted by the timeline above, Defendant has had notice of the charges and possible penalties for years and has "certainly had more than enough time to prepare [his] affairs in light of possible, likely incarceration." *United States v. Tann*, at 2006 WL 1313334, at *6. The combination of defendant's citizenship issues, his travel to other countries, his potential access to significant funds, his untrustworthiness, and his possible deportation after sentence, all demonstrate that he cannot overcome the presumption of detention pursuant to 18 U.S.C. §3143(a), and his motion should be denied.

        Respectfully submitted,

        JEANINE FERRIS PIRRO
        UNITED STATES ATTORNEY

By:    ___/s/ *Diane G. Lucas* _____

        JOHN W. BORCHERT (D.C. Bar No. 472824)
        DIANE G. LUCAS (D.C. Bar No. 443610)
        Assistant United States Attorneys
        601 D Street, NW, Room 5.238
        Washington, D.C. 20530
        Borchert: (202) 252-7679
        Lucas: (202) 252-7724
        John.Borchert@usdoj.gov
        Diane.Lucas@usdoj.gov