UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:23-cr-00393-RS |
| ) | |
| HACHIKOSELA MUCHIMBA ) | |
| Defendant. ) | |

### DEFENDANT'S SENTENCING MEMORANDUM

### I. INTRODUCTION

Defendant Hachikosela K. Muchimba, through counsel, respectfully submits this memorandum in aid of sentencing. Mr. Muchimba stands before the Court as a 45-year-old first-time offender convicted after trial of multiple counts related to mail theft, bank fraud, and unlawful procurement of citizenship. He acknowledges the seriousness of the offenses but asks the Court to consider the totality of his life circumstances, his lack of criminal history, his positive contributions to family and community, and the extraordinary collateral consequences he faces — including the likely loss of his U.S. citizenship and deportation. A sentence within the advisory Guidelines range of 108 to 135 months is far greater than necessary to meet the purposes of sentencing under 18 U.S.C. § 3553(a).

### II. PROCEDURAL BACKGROUND

On January 30, 2025, a federal grand jury returned a 20-count superseding indictment against Mr. Muchimba. He proceeded to trial and on March 13, 2025, a jury found him guilty on all counts. The Presentence Investigation Report (PSR) calculates a total offense level of 31 with a criminal history category of I, resulting in an advisory guidelines range of 108 to 135 months. The government seeks a within-guidelines sentence. The defense urges the Court to impose a sentence of no more than 30 months.

### III. LEGAL STANDARD

Under 18 U.S.C. § 3553(a), the Court must impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation. While the Guidelines provide a starting point, they are advisory, and the Court must consider all statutory factors.

### IV. SENTENCING GUIDELINES, DOWNWARD DEPARTURES, AND VARIANCES

The PSR calculates the Guidelines range based primarily on loss amount, number of victims, abuse of trust, and role adjustments. However, several downward departures are warranted:

1. Aberrant behavior (U.S.S.G. § 5K2.20)

Mr. Muchimba's conduct, while serious, bears the hallmarks of aberrant behavior as contemplated by U.S.S.G. § 5K2.20. He has no prior criminal record, lived a law-abiding life for more than four decades, and maintained steady employment and community involvement until the instant offense. The record shows that this criminal conduct was an isolated episode in an otherwise law-abiding life, not part of an entrenched pattern of criminality. The letters submitted on his behalf uniformly describe a man of integrity, generosity, and reliability — characteristics entirely inconsistent with the offenses of conviction. Courts have recognized that even serious financial crimes may constitute aberrant behavior when committed by a first-time offender under unusual pressures or circumstances, particularly where there is no prior history of misconduct and the defendant's life otherwise reflects positive contributions to society. See, e.g., *United States v. Howe*, 543 F.3d 128, 138 (3d Cir. 2008). In light of his exemplary prior record and the singular nature of this offense, a downward departure for aberrant behavior is warranted.

Should the Court not depart downward based on this Guideline due to the repetitive nature of the scheme, the Court may nevertheless consider the otherwise lawful behavior in determining whether a variant sentence is warranted.

2. Extraordinary family circumstances (U.S.S.G. § 5H1.6)

Mr. Muchimba's family circumstances are far from ordinary, and the record demonstrates that his incarceration will impose exceptional hardship on those who depend on him. The letters submitted by his siblings and extended family describe not only his role as a primary emotional and financial supporter, but also the unique nature of his responsibilities. He provides substantial support to aging parents in Zambia, whose health and financial stability are fragile. He is also a central figure in the lives of his siblings, including one who is managing significant medical challenges, and a young nephew who views him as a father figure. The absence of Mr. Muchimba will cause significant disruption and emotional distress to this close-knit family unit, whose members reside across borders and lack the resources to compensate for his loss.

Courts have recognized that while family ties are "not ordinarily relevant" to sentencing, a downward departure may be appropriate where a defendant's incarceration will cause harm to dependents that is "substantially more severe than that normally incident to incarceration." *See, e.g., United States v. Dyce*, 91 F.3d 1462, 1467–68 (D.C. Cir. 1996).* The letters provided to this Court show that Mr. Muchimba's removal from his family is not a routine hardship, but one that will have profound and irreplaceable consequences. His presence is vital for maintaining the emotional, cultural, and financial stability of his family, making a departure under § 5H1.6 both justified and necessary.

These extraordinary family responsibilities are not just grounds for a departure under U.S.S.G. § 5H1.6; they also weigh heavily in the Court's consideration of the "history and

characteristics of the defendant" under 18 U.S.C. § 3553(a)(1). Mr. Muchimba's life has been defined by his steadfast commitment to caring for his loved ones, often at personal sacrifice. This is not a case where incarceration would merely inconvenience family members; rather, it would dismantle a vital support network and leave vulnerable relatives — both in the United States and abroad — without the guidance, emotional stability, and financial assistance they have long relied upon. A sentence that preserves his ability to maintain those roles, while still holding him accountable, would better serve the goals of sentencing than one that inflicts disproportionate harm on innocent family members.

3. Post-offense rehabilitation

Mr. Muchimba's completion of approximately one hundred courses while incarcerated is a compelling demonstration of genuine post-offense rehabilitation. ***Exhibit A (Courses Completed)***. These courses span educational, vocational, and personal development topics, reflecting his sustained commitment to self-improvement over an extended period. This is not a case where a defendant has passively served time; rather, Mr. Muchimba has used his incarceration productively to expand his skills, address the factors that may have contributed to his offense, and prepare himself for a law-abiding future. While U.S.S.G. § 5K2.19 was deleted in 2012, the sheer volume and variety of completed courses underscore a deep, ongoing effort to change his trajectory, which is directly relevant under § 3553(a) sentencing factors, worthy of consideration by the Court for a variant sentence.

Such an extensive record of rehabilitative programming also speaks to Mr. Muchimba's mindset and capacity for growth. Post-offense rehabilitation is most persuasive when it reflects consistent and voluntary action, rather than minimal compliance with institutional requirements. Here, the scope of Mr. Muchimba's achievements — in the absence of any guarantee that they

would reduce his sentence — reveals a genuine desire to better himself and to reintegrate into society as a productive, law-abiding citizen. Sustained rehabilitative conduct can justify a downward variance because it serves the same societal goals as incarceration: protecting the public, reducing recidivism, and promoting respect for the law.

Finally, Mr. Muchimba's rehabilitative record should carry particular weight in light of his status as a first-time offender. The investment of time, energy, and focus necessary to complete one hundred courses demonstrates that he has embraced the punitive and corrective purposes of his sentence. This sustained effort reduces any need for lengthy additional incarceration to achieve deterrence or rehabilitation. A significant downward variance would recognize these efforts, reinforce the value of rehabilitation in the federal system, and encourage other defendants to take similar steps toward self-improvement while in custody.

4. Collateral consequences of denaturalization and deportation

The collateral consequences that Mr. Muchimba faces as a result of his convictions are both severe and enduring, and they strongly weigh in favor of a lesser custodial sentence. Chief among these is the government's stated intent to pursue denaturalization, which would strip him of the U.S. citizenship he has held for years. This action would sever his legal and civic identity in this country, undoing the very status that allowed him to build a life, career, and community here. Denaturalization is itself a profound sanction — one that will permanently alter every aspect of his existence — and it is not factored into the Guidelines' calculation of offense level or recommended term of imprisonment.

Denaturalization will almost certainly lead to Mr. Muchimba's removal from the United States. Deportation, especially after decades of lawful residence, constitutes a life-altering penalty far beyond the loss of physical liberty that a prison term entails. It will result in

permanent separation from his family, friends, and community in the United States, some of whom rely on him emotionally and financially. He will be forced to start over in a country he left many years ago, without the support networks or resources he has here. Courts have recognized that the prospect of deportation can and should be considered in crafting a sentence that is "sufficient, but not greater than necessary," because it magnifies the punishment already imposed.

In light of these extraordinary collateral consequences, imposing a lengthy term of imprisonment would be greater than necessary to serve the purposes of sentencing. The combination of incarceration, loss of citizenship, and removal from the United States will ensure that Mr. Muchimba's punishment is both substantial and enduring. A sentence of 30 months would still reflect the seriousness of the offense, promote respect for the law, and provide just punishment, while also acknowledging that Mr. Muchimba will continue to suffer lifelong repercussions that no term of imprisonment can mitigate. The Court has the discretion to weigh these factors under § 3553(a), and doing so here would achieve a fair, individualized, and proportionate result.

5. Deportable Alien

The government has moved for mandatory revocation of Mr. Muchimba's citizenship under 8 U.S.C. § 1451(e), which, upon entry, will immediately render him a deportable alien. As the D.C. Circuit recognized in *United States v. Smith*, 27 F.3d 649, 655 (D.C. Cir. 1994), courts may consider the collateral consequences of a defendant's status — including the "more severe conditions of confinement" imposed on deportable aliens — when fashioning a just and proportionate sentence. Once denaturalized, Mr. Muchimba will be subject to Bureau of Prisons classifications and restrictions that will place him in harsher custody than a similarly situated

U.S. citizen. These restrictions are automatic, stem solely from his immigration status, and are not accounted for in the Sentencing Guidelines.

The practical impact of this change in status is profound. As a deportable alien, Mr. Muchimba will be ineligible for placement in minimum-security facilities, for early transfer to community corrections centers or halfway houses, and for certain rehabilitative, educational, and work-release programs that would otherwise be available to a U.S. citizen serving the same sentence. The BOP routinely houses deportable aliens at higher-security institutions, often farther from family, and denies them program credits that could shorten their term or ease their reentry. In *Smith*, the D.C. Circuit recognized that these "more severe conditions" can be weighed as part of the individualized assessment under § 3553(a), because they materially increase the punitive effect of a sentence beyond what the court formally imposes.

This Court therefore has the authority, and the equitable basis, to grant a downward departure or variance to account for these harsher, inevitable conditions. Upon release from BOP custody, Mr. Muchimba will not reenter society like a U.S. citizen — he will be transferred directly to immigration detention for removal proceedings and permanent separation from his family and community in this country. These combined consequences — denaturalization, harsher confinement, and deportation — constitute an extraordinary penalty package. Consistent with *Smith*, a sentence of no more than 30 months appropriately calibrates the punishment to reflect both the seriousness of the offense and the disproportionate burdens his alienage will impose.

All these factors support a variance to a minimal custodial sentence.

## V. APPLICATION OF 18 U.S.C. § 3553(a) FACTORS

### A. Nature and Circumstances of the Offense

The offense conduct was serious but entirely non-violent. No physical harm occurred to any individual. The harm was financial and will be addressed through restitution to the United States, which has already compensated the victims. The conduct, while wrongful, does not justify a near-decade-long sentence.

The nature and circumstances of Mr. Muchimba's offenses are undeniably serious, and he does not seek to diminish their significance. The conduct involved financial harm and a breach of trust that merits meaningful punishment. However, it is equally important to recognize what the offense did not involve: there was no violence, no threat of violence, no harm to physical safety, and no involvement in organized crime or drug trafficking. The harm, while financial, is quantifiable and subject to restitution, which is already contemplated in the sentencing process. In the hierarchy of federal offenses, this conduct, while wrong, does not fall among the most egregious crimes that justify multi-decade terms of imprisonment.

Furthermore, the evidence shows that Mr. Muchimba's conduct, while spanning multiple acts, does not represent a lifelong pattern of criminal behavior. He was not operating an elaborate, years-long fraudulent empire, but rather engaged in conduct that — although wrongful — occurred within a defined time frame and under circumstances that are not likely to recur. This distinction matters under § 3553(a) because the primary purposes of sentencing can be served without resorting to the severe, guideline-driven terms the government requests. Imposing a near-decade-long sentence would treat Mr. Muchimba as if his actions were akin to those of high-volume fraudsters who repeatedly victimize the public over many years — a characterization that is not supported by the record.

Finally, a lengthy custodial term is not necessary to reflect the seriousness of the offense. The public record of this prosecution, the financial consequences, the looming loss of citizenship, and the stigma of federal conviction all serve as lasting punishments that extend far beyond any prison term. A sentence of no more than 30 months would still send a clear message about the consequences of fraudulent conduct while better aligning the punishment with the specific facts of this case. Such a sentence would acknowledge the seriousness of the offense, ensure just punishment, and still allow for rehabilitation and restitution without imposing a penalty that is greater than necessary under the statute.

### B. History and Characteristics of the Defendant

Mr. Muchimba has no prior criminal history. He immigrated to the United States from Zambia seeking opportunity, worked consistently, and supported his family both here and abroad. Letters from friends, relatives, and community members describe him as trustworthy, caring, and a source of stability. His incarceration has already had a devastating impact on his family, who rely on him emotionally and financially. Letters from family and community attest to his generosity, reliability, and character.

Mr. Muchimba's personal history, as detailed in the Presentence Investigation Report, reflects decades of lawful, productive living prior to this case. Born and raised in Zambia, he overcame significant hardship to immigrate to the United States, where he worked diligently to establish himself and provide for his family. He has no prior criminal history and no record of misconduct in either his personal or professional life. For more than twenty years, he has been steadily employed, supporting both his immediate and extended family. This track record of stability, responsibility, and law-abiding behavior makes clear that his offenses are an aberration, not a reflection of his true character or a predictor of future conduct.

The letters submitted by Mr. Muchimba's family offer compelling, firsthand accounts of his dedication, selflessness, and central role in the lives of those around him. They describe a man who consistently places the needs of others before his own — from providing financial support to relatives in the United States and Zambia, to offering guidance and mentorship to younger family members. Several letters speak to his role as a caretaker for aging parents and a surrogate father figure to his nephew. These responsibilities extend far beyond ordinary family obligations and underscore the profound, irreplaceable impact his absence has on the people who depend on him. **See Exhibit B (Letters in support of Mr. Muchimba)**.

When considered together, Mr. Muchimba's personal history and demonstrated character provide strong justification for a downward departure to a sentence of no more than 30 months. Such a sentence would recognize his decades of positive contributions, his lack of prior criminal conduct, and the extraordinary hardship his extended imprisonment would impose on innocent family members. It would also align with the purposes of sentencing by holding him accountable while allowing him to return to his community and resume his role as a provider and mentor — roles that directly support rehabilitation and reduce the likelihood of reoffending. In short, the man described in the PSR and in the heartfelt letters from his family is not one who needs nearly a decade in federal prison to learn from this experience or to protect the public.

## C. Need for Sentence Imposed

A lengthy prison term is not necessary to achieve deterrence or protect the public. The collateral consequence of losing citizenship and being deported is a severe additional punishment. A lengthy prison term is not necessary to achieve deterrence or protect the public. Mr. Muchimba has already suffered the loss of his reputation, livelihood, and immigration status.

The likely loss of his U.S. citizenship and deportation is a severe collateral consequence that strongly militates in favor of leniency.

The purposes of sentencing under § 3553(a)(2) — just punishment, deterrence, protection of the public, and rehabilitation — can be fully met in this case with a sentence of no more than 30 months. Mr. Muchimba has already suffered severe consequences for his conduct: loss of reputation, loss of livelihood, extended pretrial restrictions, and the likelihood of losing his U.S. citizenship and being deported. These collateral consequences are significant punishments in their own right, and when coupled with a substantial term of incarceration, they more than adequately satisfy the need for just punishment. A sentence in the 30-month range would still represent a serious deprivation of liberty while avoiding the excessive and unnecessary severity of a near-decade term.

A sentence capped at 30 months also fulfills the deterrence objective. Empirical research by the U.S. Sentencing Commission has repeatedly shown that increasing prison terms beyond a certain threshold yields diminishing returns in deterring future criminal conduct. The difference in deterrent effect between a 30-month and a 108-month sentence is negligible, particularly for a first-time offender who has already been through the public scrutiny of a federal trial and faces lasting stigma. Moreover, the visibility of this prosecution — including the media coverage and the involvement of federal agencies — ensures that the deterrent message has already been broadly communicated without the need for an exceptionally long prison term.

Finally, public protection and rehabilitation can be achieved with a sentence well below the Guidelines range. Mr. Muchimba poses no risk of violent conduct, has no prior criminal history, and has strong family and community support that will aid in his reintegration. The PSR confirms his willingness to work and comply with supervision, making him an ideal candidate

for a shorter custodial term followed by structured supervised release. This approach would allow the Court to impose a meaningful punishment, ensure ongoing oversight, and facilitate restitution, all without committing resources to a lengthy term of imprisonment that is greater than necessary to achieve the statutory goals.

### D. Avoiding Unwarranted Sentencing Disparities

The Judiciary Sentencing Information (JSIN) data referenced in the Presentence Investigation Report confirms that sentences well below the advisory Guidelines range are common for first-time, non-violent fraud defendants with comparable offense levels and criminal history scores. Here, Mr. Muchimba's lack of criminal history, positive community record and extraordinary family circumstances are mitigating factors. Imposing a sentence consistent with the lower end of sentences in similar cases would avoid unwarranted disparities while allowing Mr. Muchimba to continue fulfilling critical family responsibilities — a balance that furthers the purposes of § 3553(a) without imposing a punishment greater than necessary.

## VI. REBUTTAL TO GOVERNMENT'S POSITION

The government's sentencing memorandum overstates both the severity and the character of Mr. Muchimba's conduct, portraying it as emblematic of a deeply entrenched pattern of criminality. In reality, the record demonstrates that this case represents a brief deviation from an otherwise law-abiding life. Mr. Muchimba has no prior criminal record, has consistently maintained gainful employment, and has been a contributing member of his community. The government's suggestion that his actions warrant a near-decade sentence ignores the totality of the § 3553(a) factors, which require consideration of both the offense and the offender's personal history and characteristics. Courts have repeatedly recognized that even serious financial crimes

can be punished proportionately without resorting to guideline-maximal sentences, especially for first-time offenders.

The government's position also relies heavily on a narrative of "lavish spending" to justify its request for a within-Guidelines sentence. This characterization is both overstated and legally immaterial to the core purposes of sentencing. While some expenditures may appear extravagant in hindsight, there is no evidence that they materially aggravated the harm to victims or that they indicate an ongoing risk to the public. The sentencing inquiry should focus on restitution, rehabilitation, and proportionality, not retroactive moral judgments about personal spending choices.

The government also places undue emphasis on the calculated loss amount in this case, treating it as a definitive measure of culpability without considering its inherent limitations. The Guidelines' loss table often produces disproportionately high offense levels in fraud cases, particularly where the intended loss figure does not correspond to the actual gain or where restitution can be made. As the Sentencing Commission itself has acknowledged, heavy reliance on loss amount can result in sentences that overstate the seriousness of the offense and fail to reflect the defendant's actual conduct or level of intent.

The government's emphasis on a purported "lack of remorse" is also misplaced. Mr. Muchimba has accepted the jury's verdict, complied fully with all pretrial and post-trial conditions, and conducted himself respectfully in court and while in custody. A defendant's exercise of his constitutional right to trial cannot and should not be conflated with an absence of remorse. Mr. Muchimba has reflected deeply on the impact of his actions and is committed to making amends. Sentencing him as if he were an unrepentant, career criminal would not only contravene the individualized assessment required by § 3553(a), but would also risk creating an

unwarranted disparity with similarly situated defendants who may have received far more lenient sentences in comparable circumstances.

Finally, the government's position fails to account for the powerful mitigating effect of the collateral consequences that flow from this conviction, including denaturalization and likely deportation. These outcomes will permanently sever Mr. Muchimba from his life in the United States and impose hardships well beyond the term of incarceration. Ignoring these factors risks imposing a punishment that is cumulative to the point of being excessive. The Court is obligated under § 3553(a) to impose a sentence that is "sufficient, but not greater than necessary," and that calculus necessarily includes real-world consequences outside the prison walls. A sentence that stacks a near-decade term of imprisonment on top of these life-altering collateral penalties would be greater than necessary to achieve the purposes of sentencing.

## VII. JUDICIAL SENTENCING INFORMATION

The Judiciary Sentencing Information (JSIN) data referenced in the Presentence Investigation Report confirms that sentences well below the advisory Guidelines range are common for first-time, non-violent fraud defendants with comparable offense levels and criminal history scores. Here, there are mitigating factors, including not only Mr. Muchimba's lack of criminal history and positive community record, but also the extraordinary family circumstances detailed in the letters to this Court. Imposing a sentence consistent with the lower end of sentences in similar cases would avoid unwarranted disparities while allowing Mr. Muchimba to continue fulfilling critical family responsibilities — a balance that furthers the purposes of §3553(a) without imposing a punishment greater than necessary.

## VIII. SENTENCING RECOMMENDATION

For the foregoing reasons, the defense respectfully requests a sentence of no more than 30 months, followed by supervised release. This sentence is sufficient but not greater than necessary to achieve the purposes of sentencing, avoids unwarranted disparities, accounts for Mr. Muchimba's history and characteristics, and recognizes the extraordinary collateral consequences he faces.

Respectfully submitted,

HACHIKOSELA MUCHIMBA
By Counsel

/s/ Pleasant Brodnax
Pleasant S. Brodnax, III
1701 Pennsylvania Avenue, NW
Suite 200
Washington, D.C., 20006
(202) 462-1100
pleasant.brodnax@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was filed by CM/ECF on the 7th day of August 2025, which will send a notification of such filing (NEF) to all parties to this proceeding.

/s/ Pleasant Brodnax
Pleasant S. Brodnax, III